UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | |
|---|---|
| JOSEPH ROBERT FLOYD, | ) |
| Plaintiff, | ) ) ) |
| v. | ) CV422-002 |
| KILOLO KIJAKAZI, | ) ) ) |
| Defendant. | ) ) |

## REPORT AND RECOMMENDATION

Plaintiff Joseph Robert Floyd seeks judicial review of the Social Security Administration's denial of his application for Supplemental Security Income (SSI).

## I.   GOVERNING STANDARDS

In social security cases, courts

> . . . review the Commissioner's decision for substantial evidence. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* (quotation omitted). . . . "We may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the Commissioner." *Winschel*, 631 F.3d at 1178 (quotation and brackets omitted). "If the Commissioner's decision is supported by substantial evidence, this Court must affirm,

1

even if the proof preponderates against it." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quotation omitted).

*Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014). *see also Biestek v. Berryhill*, ___ U.S. ___, 139 S. Ct. 1148, 1154 (2019) ("Substantial evidence . . . is 'more than a mere scintilla.' [Cit.] It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" (citations omitted)). Under the substantial evidence test, "findings of fact made by administrative agencies . . . may be reversed . . . only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings." *Adefemi v. Ashcroft*, 386 F.3d 1022, 1027 (11th Cir. 2004).

The burden of proving disability lies with the claimant. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). The ALJ applies

> . . . a five-step, "sequential" process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(1). If an ALJ finds a claimant disabled or not disabled at any given step, the ALJ does not go on to the next step. *Id.* § 404.1520(a)(4). At the first step, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. *Id.* § 404.1520(a)(4)(i). At the second step, the ALJ must determine whether the impairment or combination of impairments for which the claimant allegedly suffers is "severe." *Id.* § 404.1520(a)(4)(ii). At the third step, the ALJ must decide whether the claimant's severe impairments meet

> or medically equal a listed impairment. *Id.*
> § 404.1520(a)(4)(iii). If not, the ALJ must then determine at
> step four whether the claimant has the [residual functional
> capacity ("RFC")] to perform her past relevant work. *Id.* §
> 404.1520(a)(4)(iv). If the claimant cannot perform her past
> relevant work, the ALJ must determine at step five whether
> the claimant can make an adjustment to other work,
> considering the claimant's RFC, age, education, and work
> experience. An ALJ may make this determination either by
> applying the Medical Vocational Guidelines or by obtaining
> the testimony of a [Vocational Expert (VE)].

*Stone v. Comm'r. of Soc. Sec. Admin.*, 596 F. App'x, 878, 879 (11th Cir. 2015) (footnote added).

At steps four and five, the ALJ assesses the claimant's RFC and ability to return to his past relevant work. *Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cir. 2004), *superseded by regulation on other grounds*, 20 C.F.R. § 404.1520c, *as stated in Jones v. Soc. Sec. Admin.*, 2022 WL 3448090, at *1 (11th Cir. Aug. 17, 2022). RFC is what "an individual is still able to do despite the limitations caused by his or her impairments." *Id.* (citing 20 C.F.R. § 404.1545(a)); *Moore v. Comm'r of Soc. Sec.*, 478 F. App'x 623, 624 (11th Cir. 2012). "The ALJ makes the RFC determination based on all relevant medical and other evidence presented. In relevant part, the RFC determination is used to decide whether the claimant can

adjust to other work under the fifth step." *Jones v. Comm'r of Soc. Sec.*, 603 F. App'x 813, 818 (11th Cir. 2015) (quotes and cite omitted).

## II. BACKGROUND

Floyd was 56 years old when he applied for SSI in January 2019. Tr. 231-236. He alleges a disability onset date of December 29, 2018. Tr. 231. He earned his GED, tr. 94, and has past work with sheet metal and sheet metal fabrication, tr. 255. After a hearing, tr. 89-106, the ALJ issued an unfavorable decision, tr. 8-23.

The ALJ found that Floyd's history of bilateral ankle fractures constituted severe impairments but did not meet or medically equal a Listing. Tr. 13-16. The ALJ then found that Floyd retained the RFC for medium work except:

> can do frequent bilateral lower extremity pedal controls; has frequent ability for bending, balancing, stooping, kneeling, crouching and crawling; can do frequent climbing ramps and stairs but occasional climbing ladders, ropes, and scaffolds; and can have no exposure to uneven moving surfaces with ability to use bilateral ankle braces at the work site.

Tr. 15; *see also id.* at 15-18. Floyd, he determined, could not perform his past relevant work, but could perform jobs that exist in significant numbers in the national economy. Tr. 18-20. Therefore, he was found to be not disabled. Tr. 20.

Floyd appealed the ALJ's decision to the Appeals Council, which denied his request for review. Tr. 1-4. After exhausting his administrative remedies, he filed the instant lawsuit seeking judicial review of the ALJ's decision. *See* doc. 1. He argues the ALJ's decision is not supported by substantial evidence because it does not properly weigh an opinion from a consulting examiner. *See* doc. 11 at 4; *see also* doc. 15 at 2-5. The Commissioner responds that the ALJ appropriately considered the medical evidence under the governing regulations. *See* doc. 14 at 6-8.

### III. ANALYSIS

For claims filed after March 27, 2017, as here, the ALJ will not defer or give any specific weight to medical opinions or prior administrative medical findings. 20 C.F.R. § 404.1520c(a). Rather, to determine the persuasiveness of a medical opinion or prior administrative finding in the record, the ALJ focuses on factors that include supportability, consistency, the medical source's relationship with the claimant, and the medical source's specialization. 20 C.F.R. § 404.1520c(c). The new regulations differentiate between a "medical opinion," defined as "a statement from a medical source about what [the claimant] can still do

despite [his] impairment(s) . . . ," 20 C.F.R. §§ 404.1513(a)(2) (defining "medical opinion"), 416.913(a)(2) (same), and "other medical evidence," which includes "judgments about the nature and severity of [the claimant's] impairments, [the claimant's] medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis," 20 C.F.R. §§ 404.1513(a)(3) (defining "other medical evidence"); 416.913(a)(3) (same).

The Eleventh Circuit has recently summarized the effect of the 2017 amendments to the SSA's regulations. *See Matos v. Comm'r of Soc. Sec.*, 2022 WL 97144, at \*4 (11th Cir. Jan. 10, 2022).

> This new regulatory scheme no longer requires the ALJ to either assign more weight to medical opinions from a claimant's treating source or explain why good cause exists to disregard the treating source's opinion. Under the new regulations an ALJ should focus on the persuasiveness of medical opinions and prior administrative medical findings by looking at five factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors. [20 C.F.R.] § 404.1520c(c)(1)-(5).
>
> The ALJ may, but is not required to, explain how she considered factors other than supportability and consistency, which are the most important factors. *Id.* § 404.1520c(b)(2). "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative finding(s) will be." *Id.*

6

§ 404.1520c(c)(1). And "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* § 404.1520c(c)(2).

*Id.* As for the two most important factors, "supportability relates to the extent to which a medical source has articulated support for the medical source's own opinion, while consistency relates to the relationship between a medical source's opinion and other evidence within the record." *Cook v. Comm'r of Soc. Sec.*, 2021 WL 1565832, at *3 (M.D. Fla. Apr. 6, 2021).

In March 2019 Plaintiff visited Curtis V. Cooper Primary Healthcare to establish care. Tr. 337. A nurse practitioner, Greg Morentin, examined him and noted his use of supportive braces, but observed he had "full range of motion of the extremities" and "normal motor strength in bilateral upper and lower extremities." Tr. 17 (citing tr. 337-38). Morentin wrote Plaintiff a prescription for orthotics to repair or replace his braces, straps, and insoles. *Id.* (citing tr. 339).

The next month, on April 27, 2019, Plaintiff underwent a consultative examination with Dr. Isaac Perry. Tr. 347-49. As the ALJ explained, that examination showed Plaintiff wore bilateral lower

7

extremity braces "to provide stability," and was able to heel and tandem walk, stand on his tiptoes, rise from a sitting position, and bend, but not squat without difficulty. Tr. 17 (citing tr. 347-353). Although Plaintiff reported use of a cane, he was able to ambulate in the exam room without the cane. *Id.* (citing tr. 353 ("Patient demonstrates normal gait and requires no assistance with ambulation. His examination was able to be completed without the use of his single prong cane.")). A neurological exam showed good motor strength in all muscle groups. *Id.*

In November 2019 Plaintiff visited the emergency room for treatment of a right forearm cyst. Tr. 17 (citing tr. 371-72). The ALJ noted that during the ER visit, Plaintiff "had no musculoskeletal complaints in review of systems and [a] musculoskeletal exam showed normal range of motion of all extremities with non-focal neurological deficit exam." *Id.* (citing tr. 355-402).

During his consultative examination, Dr. Perry determined Plaintiff had "[n]o difficulty reaching, pushing, grasping, or carrying out daily activities," and "[n]o functional or impaired use of extremities." Tr. 354; *see also* tr. 17 (ALJ noted Dr. Perry's "clinical exam findings of no functional limitations"). He concluded that Plaintiff "should be able to

sit, walk, and/or stand for a limited workday, lift/carry objects without limitation and . . . hold a conversation, respond appropriately to questions, carry out and remember instructions." Tr. 349. The ALJ found Dr. Perry's "functional limitations fairly persuasive" but "restrictions on sitting, walking and/or standing rather vague and not fully supported." Tr. 17. Plaintiff argues this is insufficient, and that "the ALJ should have meaningfully articulated *why* D[r]. Perry's opinion is 'rather vague and not fully supported'—especially when the ALJ found other parts of the doctor's report 'fairly persuasive.'" Doc. 11 at 10.

As the Commissioner persuasively argues, the ALJ's treatment of Dr. Perry's opinion is appropriate under the new regulatory scheme. *See* doc. 14 at 7-8. The ALJ, after detailing Dr. Perry's relatively normal examination findings, found the resulting restrictions on sitting, walking and/or standing "not fully supported." Tr. 17. Not surprising, since the ALJ had already discussed that, during the exam, Plaintiff could heel and tandem walk, stand on his tiptoes, rise from a sitting position, and bend. *Id.* Additionally, although Plaintiff arrived with a cane, he did not rely on it while walking in the exam room. *Id.* The ALJ also detailed the relatively normal examination results from Plaintiff's two other 2019

9

treatment records. *See* tr. 17. For these reasons, the ALJ's observation that Dr. Perry's restrictions on sitting, walking, and standing are "rather vague and not fully supported" is supported by substantial evidence.

## IV. CONCLUSION

Because the ALJ's decision is supported by substantial evidence in the record, the Commissioner's final decision should be **AFFIRMED**.

This report and recommendation (R&R) is submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 72.3. Therefore, **within 14 days from the date of this order**, any party may file written objections to this R&R with the Court and serve a copy on all parties. The document should be captioned "Objections to Magistrate Judge's Report and Recommendations." Any request for additional time to file objections should be filed with the Clerk for consideration by the assigned district judge.

After the objections period has ended, the Clerk shall submit this R&R together with any objections to the assigned district judge. The district judge will review the magistrate judge's findings and recommendation pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to timely file objections will result in the waiver of

rights on appeal. 11th Cir. R. 3-1; *see Symonette v. V.A. Leasing Corp.*, 648 F. App'x 787, 790 (11th Cir. 2016); *Mitchell v. United States*, 612 F. App'x 542, 545 (11th Cir. 2015).

**SO REPORTED AND RECOMMENDED**, this 22nd day of February, 2023.

_____
CHRISTOPHER L. RAY
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA